IN THE UNITED STATES DISTRICT COURT

FOR THE WESTERN DISTRICT OF WISCONSIN

- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

STEVEN STEPANSKI,

                            Plaintiff,                    OPINION AND ORDER

        v.
                                                         08-cv-430-bbc

MICHAEL J. ASTRUE,
Commissioner of Social Security,

                            Defendant.
- - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - - -

        This is an action for judicial review of an adverse decision of the Commissioner of

Social Security brought pursuant to 42 U.S.C. § 405(g).  Plaintiff Steven Stepanski, a young

man with mild mental retardation, seeks reversal of the commissioner's determination that

he is not disabled and therefore ineligible for Disability Insurance Benefits or Supplemental

Security Income under Title II and Title XVI of the Social Security Act, codified at 42

U.S.C. §§ 416(i), 423(d) and 1382(c)(3)(A).  Plaintiff contends that the administrative law

judge erred in rejecting medical and vocational evidence showing that plaintiff can maintain

a job only if in a sheltered work environment.  Having carefully reviewed the record and the

administrative law judge's decision and considered the parties' arguments, I find that the

administrative law judge properly weighed the medical and vocational opinions and reached

1

a determination supported by substantial evidence when he found that plaintiff was capable of performing certain unskilled jobs without special accommodations.

The following facts are drawn from the administrative record (AR):

FACTS

Plaintiff was born on April 17, 1983.  AR 505.  He graduated from high school after attending special education classes.  AR 23.  Wechsler Intelligence Scale testing for children indicated that plaintiff had a verbal IQ of 72, a performance IQ of 69 and a full scale IQ of 68.  AR 326.  After finishing high school, plaintiff performed numerous part-time, unskilled jobs, many of them for short durations.  He has worked as a dishwasher, fast food server, bagger at a grocery store and general laborer.

In early 2004, plaintiff applied for supplemental security income and disability insurance benefits, alleging that he had been disabled since September 17, 2003 because of a learning disability and problems with his hands.  AR 121.  Plaintiff alleged that because of his disabilities, he could not understand what his employers wanted done and could not work fast enough.  AR 122.  According to plaintiff's work history reports, he was fired from many jobs because he could not work fast enough or meet the needs of his employer.  AR 178-184.

2

On September 5, 2003, Joseph L. Breitenstein, Ph.D., performed a consultative psychological evaluation of plaintiff at the request of the state disability agency. Plaintiff reported that he was living with his girlfriend who was pregnant with their child and that he had been working 20-25 hours a week as a grocery bagger for the past couple of months. AR 337-38. He said that in addition to his mental limitations, he lacked coordination in his hands. Breitenstein noted that plaintiff was dressed appropriately, cooperated with the interview and was able to follow the conversation and simple, three-step commands. Breitenstein measured plaintiff's IQ by administering the WAIS-III, the results of which indicated that plaintiff had a verbal IQ of 68, a performance IQ of 65 and a full scale IQ of 64. AR 340. From these tests and his interview with plaintiff, Breitenstein concluded that plaintiff met the intellectual criteria for mild mental retardation but lacked significant behavioral disturbance to fully qualify for this diagnosis.[1] AR 341.

Assessing plaintiff's work capacity, Breitenstein found that plaintiff was limited by his low IQ and would have a difficult time understanding, remembering and carrying out simple instructions. He indicated, however, that plaintiff should be able to understand and

---

[1] According to the <u>Diagnostic and Statistical Manual of Mental Disorders</u>, mental retardation is characterized by significantly subaverage intellectual functioning (an IQ of approximately 70 or below) with onset before age 18 that is accompanied by significant impairments in adaptive functioning. American Psychiatric Association, <u>Diagnostic and Statistical Manual of Mental Disorders</u> (4th ed. Text Revision), at 41(2000). A full range IQ score between 50-55 and 70 is regarded as mild retardation. <u>Id</u>. at 42.

carry out simple tasks if he was provided "basic tasks and appropriate instructions." AR 342. Breitenstein concluded that plaintiff had no impairment in his ability to respond appropriately to supervisors and coworkers, withstand routine work stresses or adapt to change and would probably be able to maintain concentration, attention and work pace. Plaintiff might need vocational support in finding full time employment that met his limitations, Breitenstein said, but he should be able to find work that was not in a formally sheltered environment. AR 342.

On May 25, 2004, plaintiff was evaluated by psychologist Stephen H. Porter. Plaintiff reported that after moving to Tomah he had had several jobs but had not held a job for longer than six weeks. Plaintiff explained that he could not work fast enough or catch on to instructions. AR 375. Porter administered tests to measure plaintiff's cognitive abilities and functional skills. These tests showed that plaintiff could read and write at a third grade level, spell at a second grade level and do mathematics at a fourth grade level. According to Porter, plaintiff was functionally illiterate, lacking the ability to read, write or calculate well enough to take care of the demands of independent living. Overall, he functioned on approximately the same level as an eight year old. AR 376. Porter concluded that it would be "appropriate to view" plaintiff as being a developmentally disabled individual and as a disabled individual using a Social Security standard. He concluded that once plaintiff was identified as disabled, he could work in a sheltered work environment that

4

could eventually lead to employment in the community to supplement his disability.  AR 376.

Three state agency consulting psychologists who reviewed plaintiff's case file at different times agreed that plaintiff was mildly mentally retarded.  With respect to work limitations, they found that he was moderately limited in the following areas: understanding, remembering and carrying out detailed instructions; maintaining attention and concentration; completing a normal work day and work week at a consistent pace; getting along with coworkers and peers; and responding appropriately to changes in the work setting.  AR 355, 380, 408.  Two of the reviewing psychologists found that plaintiff was not significantly limited in his ability to sustain an ordinary routine without special supervision, although one found that he was moderately limited in this area.  All three psychologists found that plaintiff was not significantly limited in his ability to understand, remember and carry out short and simple instructions, perform activities within a schedule, maintain regular attendance and be punctual within customary tolerances.

At the administrative hearing, plaintiff testified that he can read and write small words and add and subtract "a little."  AR 505-06, 508.  He testified that he had worked with the Department of Vocational Rehabilitation, which had provided him a job coach for several months while he was working as a dishwasher at Perkins Restaurant in Oshkosh, Wisconsin.  AR 506.  He quit that job to move to Tomah, Wisconsin.  AR 512.  In Tomah,

he worked as a bagger at Country Market for three to four months before the store was sold, AR 529, and then worked as a dishwasher at Burnstad's for two years. AR 510. At the time of the hearing, plaintiff had been working for about a year doing housekeeping at Jellystone Park. AR 507. He worked 30 to 40 hours a week. According to plaintiff, he was employed as part of a program in which Jellystone received a tax break in exchange for employing people with developmental disabilities. AR 508.

Plaintiff testified that he could not work at fast-paced jobs such as fast food service because he could not keep up. AR 517. He testified that he had problems following instructions. AR 519. Plaintiff lived with his girlfriend who did the cooking, washed the dishes, cleaned and shopped for groceries. Plaintiff helped out by picking up, taking out the trash and doing laundry. AR 523. He testified that he watches television and plays video games and has never had a driver's license. AR 526.

Karl Botterbusch, a neutral vocational expert, testified that plaintiff had a history of unskilled light and medium work. AR 530. The administrative law judge asked Botterbusch whether plaintiff's past jobs could be performed by a hypothetical individual of plaintiff's age, education and work experience with the following limitations: "limited but satisfactory" ability to relate to coworkers, function independently, maintain attention and concentration, demonstrate reliability and respond to changes in the work environment; "seriously limited but not precluded" from dealing with work stresses; "no useful ability" to understand,

6

remember and carry out detailed job instructions; and who had a  general academic knowledge at a fourth grade level, spells at the second grade level, reads and writes at the third grade level and is able to do mathematics at the fourth grade level.  Botterbusch answered that this individual could perform plaintiff's past jobs as fast food worker, kitchen helper, bagger and housekeeper as well as jobs as a commercial cleaner (51,000 jobs in Wisconsin), automatic car wash attendant (1,200 jobs in Wisconsin) and farm worker (4,000 jobs in Wisconsin).  He stated that his testimony was consistent with the information in the Dictionary of Occupational Titles.  AR 531-32.

In response to questioning by plaintiff's lawyer, Botterbusch testified that developmentally disabled people were often able to get jobs but were not able to maintain them.  If plaintiff's statements about his reasons why he had not lasted at various jobs were accurate, said Botterbusch, it would indicate that plaintiff was someone who would have difficulty maintaining employment.  AR 537.

The administrative law judge asked Botterbusch if his answer would be the same if he did not know why the individual left the jobs.  Botterbusch stated he would have to sit down with the individual and discuss the reasons for leaving the jobs.  The administrative law judge asked Botterbusch whether it would make any difference if some jobs were held for longer periods and some were for shorter periods.  Botterbusch said he would want to know why the individual worked at some jobs longer than he had worked at other jobs.  AR

7

536.  He explained that individuals may be accommodated by some employers or may work longer in jobs for which they are better suited.  AR 537.

After the hearing, plaintiff's lawyer submitted a letter from Richard Willette, a vocational rehabilitation consultant.  Willette indicated that he was responding to questions "about people with mental illness and learning disabilities, who, while they are able to get a job, but [sic] due to their problems make mistakes, exhibit bizarre behavior, etc."  AR 291.  Willette wrote:

> They cannot retain a job but for a few months.  This constitutes an adjustment to other jobs.  Evidence of this would be a job history of multiple jobs with as many as 12 in 5 years, but none for more than 6 months and most for only 1 or 2 months.

AR 291.

On June 26, 2007, the administrative law judge issued a written decision rejecting plaintiff's arguments and finding him not disabled.  AR 15-26.

OPINION

This court must uphold the administrative law judge's findings so long as they are supported by "substantial evidence," 42 U.S.C. § 405(g), which has been defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion."  Richardson v. Perales, 402 U.S. 389, 401 (1971).  When reviewing the commissioner's

8

findings under § 405(g), the court cannot reconsider facts, reweigh the evidence, decide questions of credibility or otherwise substitute its own judgment for that of the administrative law judge. Clifford v. Apfel, 227 F.3d 863, 869 (7th Cir. 2000). Thus, where conflicting evidence allows reasonable minds to reach different conclusions about a claimant's disability, the responsibility for the decision falls on the commissioner. Edwards v. Sullivan, 985 F.2d 334, 336 (7th Cir. 1993).

The Social Security Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. § 1382c(a)(3)(A). A claim of disability is determined under a sequential five-step analysis. 20 C.F.R. §§ 404.1520; 416.920. At the first step, the commissioner determines whether the applicant is engaging in substantial gainful activity. §§ 404.1520(i); 416.920(i). A person who is able to perform work that is both substantial and gainful is presumed not to be disabled regardless of his or her medical condition, age, education or work experience. §§ 404.1520(b); 416.920(b). (The regulations provide a formula by which the commissioner determines yearly what amount of monthly earnings constitutes a rebuttable presumption of "substantial gainful activity." 20 C.F.R. §§ 404.1574(b)(2)(ii); 416.974(b)(2)(ii).) Work

performed under "special conditions," such as in a sheltered workshop, may not constitute substantial gainful activity.  §§ 404.1573(c); 416.973(c).

At step two, the commissioner evaluates whether the applicant has a physical or mental impairment that is severe, medically determinable and has lasted or is expected to last for 12 months.  §§ 404.1520(ii); 416.920(ii).  Assuming the claimant clears this step, then at step three the commissioner compares the impairment to a list of impairments that are considered conclusively disabling.  If the impairment meets or equals the criteria of a listed impairment, then the applicant is disabled.  If the impairment does not satisfy the criteria of a listing, then the applicant is not disabled and the evaluation continues.  §§ 404.1520(iii); 416.920(iii).

The inquiry at steps four and five requires an assessment of the claimant's "residual functional capacity," which the commissioner has defined as "an assessment of an individual's ability to do sustained work-related physical and mental activities in a work setting on a regular and continuing basis."  Social Security Ruling 96-8p.  "A 'regular and continuing basis' means 8 hours a day, for 5 days a week, or an equivalent work schedule." Id.  At step four, the commissioner compares the claimant's residual functional capacity to the physical and mental demands of the claimant's past relevant work to determine whether he can still do that work.  §§ 404.1520(iv); 416.920(iv).  If the claimant can perform his past relevant work, then he is not disabled.  If he cannot perform his past relevant work, then the

10

commissioner moves to the last step of the sequential evaluation and assesses whether the claimant can make a vocational adjustment to other work in the economy in light of his age, education, work experience and residual functional capacity.  §§ 404.1520(v); 416.920(v).

In this case, the administrative law judge performed the required five-step sequential analysis.  At step one, he found that although plaintiff had engaged in regular work activity on an ongoing basis, there was no evidence to show conclusively that plaintiff had worked at substantial gainful activity levels.  AR 18.  At step two, he found that plaintiff had the severe impairment of mild mental retardation.  At step three, he found that plaintiff did not have an impairment or combination of impairments that met or medically equaled any impairment listed in 20 C.F.R. 404, Subpart P, Appendix 1.  AR 18-20.

For work limitations, the administrative law judge adopted those he had presented in his first hypothetical to Botterbusch at the hearing.  In doing so, he noted that he had taken plaintiff's statements regarding his "problems with fast paced jobs and other mental limitations into consideration with the provision that it is clear that he has held a number of jobs and one in particular for as long as two years."  AR 22.  At step four, the administrative law judge found that although plaintiff had held numerous part-time jobs, the evidence was insufficient to find that the claimant had performed any work which could be legally defined as past relevant work.  20 C.F.R. §§ 404.1565, 416.965 (past work experience not relevant unless it was substantial gainful activity).  At step five, the administrative law

11

judge found that plaintiff was able to do other work that existed in the national economy. Relying on the vocational expert's testimony in response to his first hypothetical, the administrative law judge found that plaintiff could engage in work as a commercial cleaner, automatic car wash attendant or farm worker, and, therefore, plaintiff was not disabled.

As he did in the administrative proceedings, plaintiff argues that he is disabled because, although he can obtain jobs, he cannot *retain* them, at least not without special accommodations from his employer.  Although the commissioner's regulations do not explicitly require an administrative assessment of a claimant's ability to *hold,* as opposed to merely *perform,* a job, such a finding is an implicit part of the disability analysis.  Singletary v. Bowen, 798 F.2d 818, 822 (5th Cir. 1986) ("A finding that a claimant is able to engage in substantial gainful activity requires more than a simple determination that the claimant can find employment and that he can physically perform certain jobs; it also requires a determination that the claimant can hold whatever job he finds for a significant period of time."); Parsons v. Heckler, 739 F.2d 1334, 1340 (8th Cir. 1984) ("the ability of a claimant to perform jobs in the national economy must take into account the actual ability of the claimant to find and hold a job in the real world").  Plaintiff relies on two pieces of evidence to support his position:  Botterbusch's hearing testimony and Porter's opinion.

A.  <u>Botterbusch's Testimony</u>

Plaintiff argues that the administrative law judge "ignored" Botterbusch's testimony, which plaintiff characterizes as conclusive evidence that he cannot maintain any job.  This argument fails for two reasons.  First, it rests entirely upon a construction of Botterbusch's testimony that is not supported by the record.  Contrary to plaintiff's assertion, Botterbusch never testified that plaintiff did not have the ability to perform "normal, competitive employment" or that he was unable to maintain any job.  Instead, he offered the unremarkable testimony that if plaintiff was telling the truth about the difficulties he had performing various jobs and the reasons he left those jobs, then plaintiff likely would have difficulty maintaining a job, as was common with many people with developmental disabilities or mental impairments.  Botterbusch's general observations about plaintiff's work history and the difficulties faced by developmentally disabled individuals do not translate into a specific determination that plaintiff is incapable of maintaining any kind of employment.

Second, as plaintiff admitted in his post-hearing brief to the administrative law judge, Botterbusch's opinion was essentially the same as that offered by Willette, the vocational expert whose opinion *was* discussed by the administrative law judge.  Because they were duplicative, it was not necessary for the administrative law judge to discuss both opinions.

13

Books v. Chater, 91 F.3d 972, 980 (7th Cir. 1996) (administrative law judge errs when he fails to discuss entire "line of evidence" but need not address redundant evidence).

The administrative law judge discounted Willette's opinion to the extent it suggested plaintiff was disabled, because it was based upon the erroneous assumption that plaintiff was unable to hold a job for more than a few months and that he had been fired from all of his jobs because of his disability.  As support for this conclusion, the administrative law judge noted that plaintiff had been able to work as a dishwasher at Burnstad's for two years and had held two previous dishwashing jobs for six months each.  In addition, the administrative law judge found that plaintiff had quit certain jobs for his own reasons and not because of his impairment.

Plaintiff argues that the administrative law judge's reliance on his ability to hold a dishwashing job at Burnstad's for two years was erroneous because  1) plaintiff had the job for only about 15 months; 2) the job was not full time; and 3) plaintiff was able to perform the job only with special accommodations from his employer.  None of these arguments is persuasive.  First, it is immaterial whether plaintiff held the dishwasher job in question for 15 months, as shown on his work activity report, or for a full two years, as he testified.  Whichever number is correct, the salient point is that plaintiff was able to hold a job for longer than a few months.  Second, the fact that plaintiff might not have worked 40 hours a week at Burnstad's does not undermine its evidentiary significance.  Plaintiff offers no

14

suggestion that he was *incapable* of performing that job on a full time basis.  Without more information, the administrative law judge could reasonably infer that plaintiff did not work more because he did not want to or because part-time work was all that was available. 20 C.F.R. §§ 404.1571, 416.971 ("Even if the work you have done was not substantial gainful activity, it may show that you are able to do more work than you actually did.")

Plaintiff's third argument is even more problematic.  Plaintiff supports his contention that he received special accommodations from Burnstad's with a "Work Activity Questionnaire" that his lawyer discovered in his file that he admits was not part of the administrative record.  The form is dated March 18, 2005 and is signed by the "Café Manager," whose signature is illegible.  In response to the question "Did the person do the work under special conditions, such as with extra help/supervision, fewer/easier duties, frequent rest periods or lower production?", the manager checked the box "yes."  The manager also responded that plaintiff was not frequently absent from work and that his work was satisfactory.  (Although there is nothing on the form identifying the person completing it as a Burnstad's employee, plaintiff's attorney asserts that he used the signer's name and phone number to confirm that the form came from Burnstad's.)

As plaintiff concedes, this questionnaire was not in the administrative record and therefore could not have been considered by the administrative law judge in making his decision.  Accordingly, this court may not consider it.  Eads v. Secretary of Dept. of Health

15

and Human Services, 983 F.2d 815, 817 (7th Cir. 1993) ("The correctness of [the ALJ's] decision depends on the evidence that was before him").  Further, there is no basis for remanding this case pursuant to sentence six of § 405(g) because plaintiff has made no attempt to show that good cause existed for the questionnaire's omission from the record, that the evidence was not in existence or available to plaintiff at the time of the hearing or that there is a reasonable probability that the commissioner would have reached a different decision had the evidence been considered.  Perkins v. Chater, 107 F.3d 1290, 1296 (7th Cir. 1997) (explaining requirements for remand for consideration of additional evidence under sentence six of § 405(g)).  Plaintiff's contention that the commissioner waived any objection to the questionnaire by failing to address it in his brief is to no avail:  it is plaintiff who has waived the issue by failing to make any argument why the court should consider the questionnaire notwithstanding its absence from the administrative record.  United States v. Lanzotti, 205 F.3d 951, 957 (7th Cir. 2000) (perfunctory and undeveloped arguments waived).

In any event, the bare-bones questionnaire provides little support for plaintiff's contention that he is unable to work absent special accommodations.  The form provides no details about the special condition under which plaintiff worked.  Further, plaintiff never testified that he received any special accommodations from Burnstad's and nothing else in the record supports that contention.  Indeed, although plaintiff's lawyer made a point in his

16

pre-hearing brief to argue that plaintiff's job at Jellystone was an accommodated position, he made no such arguments with respect to Burnstad's.

Finally, the administrative law judge did not rely solely on the Burnstad's job as a basis for rejecting plaintiff's claim that he was unable to hold a job.  He also noted that plaintiff had worked at two previous dishwashing jobs for six months at a time and that he had left one of those jobs voluntarily.  Plaintiff raises no challenge to these findings.  I note that although the record indicates that plaintiff had the assistance of a job coach at one of those jobs for the first two months, he appears to have been able to perform the job on his own for the next four months before he left to move to Tomah.  Similarly, there is nothing to indicate that plaintiff had problems performing the other dishwasher job: his work history report indicates that he was fired after calling in sick because his boss did not believe him. AR 92.  Overall, substantial evidence in the record supports the administrative law judge's decision to reject plaintiff's contention that he has never been able to hold a regular job for any significant length of time.  It follows that the administrative law judge properly rejected any opinions that were founded on that contention.

### B.  Porter's Opinion

Plaintiff contends that the administrative law judge erred in accepting Breitenstein's opinion that plaintiff was capable of working in a non-sheltered environment over Porter's

17

opinion to the contrary.  As an initial matter, I reject plaintiff's argument that, because Porter was affiliated with the clinic where plaintiff had received other care and had access to plaintiff's medical records, he should have been deemed a "treating physician" whose opinion was entitled to special consideration.    20 C.F.R. §§ 404.1527(d)(2) and 416.927(d)(2) (explaining that more weight given to opinions from treating sources).  Not only do the regulations fail to support plaintiff's institution-as-physician argument, but there is also no support for plaintiff's suggestion that his other treatment at Gunderson Lutheran provides a "longitudinal picture" of his impairment.  Plaintiff's other records address physical, not mental, problems.

Under the regulations, an administrative law judge faced with competing medical opinions from non-treating physicians must decide how much weight to give each opinion by considering a number of factors, including the degree to which the opinion is supported by findings and reasoning, its consistency with the record as a whole and the specialty of the physician offering the opinion.  20 C.F.R. §§ 404.1527(d), 416.927(d).  In this case, the administrative law judge determined that Porter's opinion was entitled to less weight than Breitenstein's because it was based in part on Porter's belief that plaintiff had never been able to hold a job for "any longer than a month."  (As plaintiff points out, this is the administrative law judge's language, not Porter's:  Porter noted that plaintiff had held one job as a bagger for six weeks.  Nonetheless, this two-week discrepancy is not material.)

18

Plaintiff criticizes this finding, pointing out that when Porter gave his opinion, plaintiff had not begun working at Burnstad's and thus had not held a job for two years. This argument does little to advance plaintiff's position. Before Burnstad's, plaintiff had held two jobs for 6 months each in 2002 and 2003, which is contrary to Porter's statement that plaintiff had never held a job for longer than six weeks.

Plaintiff also contends that the administrative law judge overstated the extent to which Porter relied on plaintiff's alleged inability to retain a job, arguing that Porter's opinion was based upon objective measures of plaintiff's intelligence and functioning and not on his job history. This argument is no more persuasive than the first. Although it is true that Porter did not delineate precisely how much weight he gave to plaintiff's inability to maintain employment, it is plain that it was a significant factor. Porter devoted a paragraph of his report to plaintiff's efforts to find work since moving to Tomah and noted that "[i]n all cases, the report is that Steve simply could not work fast enough or catch on to instructions." AR 218. Had Porter been aware that plaintiff had been able to maintain employment as a dishwasher for up to six months in the past, he might have reached a different conclusion about plaintiff's need to work in a sheltered environment.

In sum, I cannot say that the administrative law judge applied the regulations improperly or drew illogical conclusions from the evidence when he determined that Porter's opinion about plaintiff's need for a sheltered work environment was entitled to less weight

19

because it was based partly upon an inaccurate picture of plaintiff's work history.   In addition, Porter's opinion was contradicted by all three non-examining state agency psychologists, who found that plaintiff had at most moderate limitations in his ability to meet the mental demands of unskilled work.  Accordingly, the administrative law judge did not err in discounting Porter's opinion.

## C.  Other Challenges

Plaintiff raises other challenges to the administrative law judge's findings, but these are picayune.  He contends that the credibility finding is flawed because the administrative law judge appeared to rely on a contradiction between plaintiff's statement that he had never obtained a driver's license and Breitenstein's report, in which he noted that plaintiff had identified himself by presenting a driver's license.  Plaintiff argues that what he actually presented to Breitenstein was a state identification card and that Breitenstein erred in describing it as a driver's license.  Even so, the driver's license discrepancy appeared to play only a minor role, if any, in the administrative law judge's credibility determination.  In fact, the only aspect of plaintiff's testimony that the administrative law judge rejected was his suggestion that he could not maintain any kind of job for more than a few weeks.  As just explained, this finding was adequately supported by plaintiff's work history reports and testimony.

20

Plaintiff also contends that the administrative law judge's questions during the cross-examination of Botterbusch by plaintiff's counsel suggest that he had already made up his mind that he was going to deny plaintiff's application.  It is just as likely, however, that the administrative law judge was merely trying to insure that the record was fully developed and to understand the basis for the expert's answers.  Without more, the administrative law judge's questions are insufficient to support an inference of bias.

In conclusion, this court does not underestimate the significant burdens faced by plaintiff in attempting to find and maintain steady employment in light of his limitations.  Indeed, it is entirely possible that plaintiff has been able to perform the few jobs he has held for any length of time only because of the sympathy of his employers or the indulgence of his coworkers.  However, this court cannot reverse the commissioner's decision unless that is the only reasonable conclusion to be drawn from the record.  It is not.  It is equally possible that plaintiff succeeded at those jobs because they were better suited for him than the various fast food jobs he had attempted unsuccessfully to perform.  The administrative law judge controlled for the factors that would lead to job failure by restricting him to jobs that did not exceed his reading, writing and math skills, require detailed instructions or involve much stress, limitations that were supported by one examining and three non-examining psychologists and which are not challenged by plaintiff.  Having so reduced

plaintiff's residual functional capacity, the administrative law judge was entitled to rely on Botterbusch's testimony that there were various jobs that plaintiff could perform.


ORDER

IT IS ORDERED that the decision of defendant Michael J. Astrue, Commissioner of Social Security, is AFFIRMED and plaintiff Steven Stepanski's appeal is DISMISSED.  The clerk of court is directed to enter judgment in favor of defendant and close this case.

Entered this 9th day of March, 2009.

BY THE COURT:

/s/

_____
BARBARA B. CRABB
District Judge

22